UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JOHNNIE P. WASHINGTON,

                       Plaintiff,

  -against-

                                                        16-cv-9090 (NSR)
                                                            ORDER & OPINION

VALERIE MONROE, medical provider,

                       Defendant.
----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

    Johnnie Washington ("Plaintiff" or "Washington"), an incarcerated *pro se* litigant, commenced this action against Valerie Monroe ("Defendant" or "Monroe"), pursuant to 42 U.S.C. § 1983. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff alleges that Defendants is liable for violating his Eighth Amendment right to be free from cruel and unusual punishments because she did not refill his medicines for cholesterol and moderate hypertension, which allegedly caused him severe headaches, nose bleeds, and chest pain. (Compl. ¶ V). Consequently, Plaintiff seeks $9,000.00 in damages and to have Monroe removed as his healthcare provider. (*Id.* ¶ VI.)

    Presently before the Court is Defendant's Motion for Summary Judgment (Motion for Summary Judgment, ("Defendant's Motion"), ECF No. 48.) For the reasons discussed below, Defendant's Motion is GRANTED.



1

## I. BACKGROUND

The facts below are taken from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute except where so noted. All rational inferences are drawn in Plaintiff's favor.

Plaintiff is an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"). He is currently incarcerated at Sing Sing Correctional Facility. Defendant is a nurse practitioner employed by DOCCS who served as a healthcare provider at Sing Sing from 2007 to the present.

On January 2, 2015, Plaintiff, who is serving sentence of 25 years to life, was transferred from Southport Correctional Facility to Sing Sing. Plaintiff was brought to the medical department on January 2, 2015 and given an initial examination and orientation. Monroe was not present at this initial medical visit.

Every inmate is given an initial medical examination within the first few days of being transferred from another facility. During this initial medical examination, Plaintiff's medical history was reviewed, and his prescription medication was discussed. Plaintiff arrived at Sing Sing with an existing medical order for two prescription medications. The first medication was Atorvastatin and the second was Hydrochlorothiazide. Altorvastatin controls high cholesterol. Hydrochlorothiazide is a water pill prescribed to treat Plaintiff's moderate hypertension. Plaintiff has been on both of these medications for many years. Plaintiff has received these medications at other correctional facilities prior to arriving at Sing Sing.

In or about this time, although the precise date is disputed, a new prescription was issued for Plaintiff for both of his medications. He was provided a 30-day supply and given 5 refills on his prescription. At his new inmate orientation, the policy and procedure for obtaining medication at Sing Sing was thoroughly explained to him and put into writing. The parties dispute what information was relayed to Plaintiff. Defendant claims that it was explained that to refill a prescription, plaintiff needed to notify the pharmacy before his medication was due to run out, that Plaintiff was to report to "sick call" one week before his medication runs out if he had no refills left, and also to report to sick call if he did not receive his medication within three days after his request was submitted. Plaintiff claims that he was told that if he had problems receiving his refills, he should write to Monroe, who would personally handle the delay of refills.

Plaintiff's medications are given to him in 30 days increments and he is allowed to keep possession of the medication in his cell. This is called having "self-carry" medication. According to Defendant, "self-carry" inmates are expected to cooperate in their own health care and to take their medication when prescribed. They are also responsible for obtaining their own refills of their prescriptions through the pharmacy. According to Plaintiff, self-carry inmates are not required to report to sick call when their last refill expires. Rather, Plaintiff states that Monroe told him to write to his healthcare provider and submit a call slip when his last refill expired. Plaintiff further states that he never had problems getting refills of his medication until May 2015, and that when he started submitting his sick call slips at that time, as required, he received no answers.

Plaintiff met with Monroe for the first time on January 14, 2015. During the meeting, all the interactions with Monroe were professional. Defendant claims that at the initial meeting, she

3

informed Plaintiff that if he had any problems or needed to see her, he should report to sick call. Plaintiff claims otherwise. He states that she instructed him to write to her and submit a call slip.

Monroe saw Plaintiff again at a scheduled chronic care visit on February 18, 2015. During this meeting, his compliance with medication was discussed. Plaintiff confided in Monroe that he does not always take his Atorvastatin because that is for lowering his cholesterol only when it is high whereas he always needs to take hydrochlorothiazide. Monroe counseled Plaintiff and told him that he should take his medication as prescribed.

Plaintiff refilled his prescription successfully in January and February. According to Defendant, he declined to seek a refill in March, but again successfully refilled his medication in the middle of April 2015. Plaintiff claims that it was in March/April when he began "having problems receiving medication." Basically, Plaintiff claims that he got an emergency refill in March, but then began having issues and started filling out sick call slips and writing letters to the nurse and grievance committee, explaining that he had not received his medication refills.

Plaintiff's initial prescription expired on June 2, 2015. Plaintiff did not see Monroe again until September 19, 2015. This is the first time that Monroe became aware that Plaintiff had not gotten his medication during the months of June, July, and August 2015. Upon learning that Plaintiff needed a new prescription for medication, she wrote him a new prescription for another 6 months immediately. Plaintiff claims that during those months he "still did not receive refill medication ever."

During the time period of June through September 2015, he did not see Monroe in person. At no period during that time did Plaintiff seek to go to sick call because he was feeling bad.

4

Plaintiff does state that, during this time, he wrote several letters to the pharmacy and one to Monroe, dated July 14, 2015. Plaintiff claims that his letters referenced and requested "sick call." Plaintiff further states that, during this time period, he had occasional pain and "bad headaches." Monroe never received any letter from Plaintiff and therefore had no communication with Plaintiff from February 18, 2015 through September 2015. Monroe does not work in the pharmacy.

The pharmacy is separate from the medical department in the prison. The pharmacy does not contact the medical center if an inmate does not fill a prescription. Inmates are responsible for refilling their own prescriptions. Each medical provider has approximately 300 inmates assigned to their care. Medical providers are not informed by the pharmacy if the inmate chooses to refill his prescription. Plaintiff, however, states that he has been prescribed hydrochlorothiazide since 1994 and knows that he needs to refill it when his "severe headaches occur."

Because Plaintiff refused to go to sick call, Monroe was unaware that Plaintiff had not received his medications until she saw him in September 2015, at which point, she immediately acted. When Monroe saw him in September 2015, he was not in grave danger. He only complained of minor headaches and did not require further testing or additional medical treatment. Plaintiff claims that, at this time, he was placed on "call out."

## II. STANDARDS OF REVIEW

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

5

the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

When dealing with summary judgment motions in *pro se* cases, courts in this Circuit must "read the pleadings of a *pro se* plaintiff liberally and "raise the strongest arguments that they suggest" *McPherson v. Coombe*, 17 F.3d 276 (2d Cir. 1999) (*quoting Burgos v. Hopkins*, 214F.3d.787, 790 (2d. Cir. 1994). Pleadings drafted by *pro se* plaintiffs moving for summary judgment are not held to the same "stringent standards" as "formal pleadings drafted by lawyers." *Shariff v. Poole*, 689 F.Supp.2d 470, 476 (S.D.N.Y. January 20, 2010). On the other hand, *pro se* plaintiffs cannot overcome a motion for summary judgment by simply making "bald" assertions that are unsupported by the evidence. (*Id.*)

### B. Section 1983 Actions

Section 1983 provides, in relevant part, that:"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights

7

elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

### C. Eighth Amendment and Medical Indifference

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Therefore, the Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469, 132 S. Ct. 2455, 2463, 183 L. Ed. 2d 407 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183, 1189, 161 L. Ed. 2d 1 (2005). The right emanates from the basic precept of justice that punishment for crime should be graduated and proportioned to [the] offense. *Roper*, 543 U.S. at 560 (citations and internal quotations omitted).

"By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Id*.

In order to assert an Eighth Amendment claim for medical indifference, plaintiff must plead facts to establish that defendant acted with "deliberate indifference to serious medical needs." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). It is well-established that "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, [and that] not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eight Amendment violation." *Salahuddin v. Goord*, 467 F.3d 279 (2d Cir. 2006) (internal quotations omitted).

Medical deliberate indifference claims under Eighth Amendment of the U.S. Constitution and Section 1983 require courts to engage in a two-part inquiry, one objective and the other subjective. The subjective inquiry focuses on the defendant's motive and the objective inquiry on the conduct's effect. *Chance,* 143 F.3d at 702. "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind." *Id*. A "sufficiently serious" medical need is a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). A prison official acts with the requisite deliberate indifference when that official "knows of and

disregards an excessive risk to inmate health or safety…" *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference also requires the prisoner to "prove that that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. 97, 104 (1976). "Mere disregard over proper treatment does not create a constitutional claim" as long as the treatment was adequate. *Chance*, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment or the need for specialists…are not adequate grounds for a section 1938 claim." *Sonds v. Barnabas Hops. Corr. Health Servs.*, 151 F.Supp. 2d 303, 312 (S.D.N.Y. 2001).

## III. DISCUSSION

### A. Eighth Amendment Claim

Plaintiff claims that he was subject to cruel and unusual punishment, in violation of his Eighth Amendment rights, when he, instead of reporting to sick call, wrote a series of letters directed to Monroe, who did not give him refills or respond to his letters. He claims this negligence led him to experiencing severe headaches, chest pain, bloody nose, collapsing in his cell and being wheelchaired to emergency care. (Pl. Br. at 37, 43-44, ECF No. 45.) The Court disagrees.

#### 1. Objective Harm

Plaintiff has failed to adduce any proof that he has suffered sufficiently serious harm. Plaintiff, at best, states that as a result of being deprived of his medication, he suffered occasional

headaches and minor pain. This does not rise to the level of harm required for deliberate indifference due to medical neglect. *See Bumpus v. Canfield*, 495 F.Supp.2d 316,322 (W.D.N.Y. 2007) (granting summary judgement for defendants after plaintiff inmate was not given his hypertension medication for several days because there was no evidence that the delay caused any actual harm to plaintiff or that the delay gave rise to a significant risk of serious harm); *Youngblood v. Artus*, 2011 WL 6337774, *7-8 (N.D.N.Y. Dec. 19, 2011) (dismissing plaintiffs case because he failed to allege that he suffered harm as a result of defendant's failure to give him his seizure medication); *Patterson v. Lilley*, 2003 WL 21507345, *7 n. 3 (S.D.N.Y. June 20, 2003) (finding that the defendant could only be found to have been deliberately indifferent for an "existing, serious medical conditions, not a speculative, future medical injury"); *Smith v. Carpenter*, 316 F.3d 178, 187-89 (2d Cir. 2003) (finding no constitutional violation because of two alleged episodes of missed HIV medication where the plaintiff failed to present evidence of permanent or on-going harm or an unreasonable risk of future harms stemming from the missed doses).

Although "chronic migraine headaches are often found to be 'sufficiently serious' to warrant constitutional protection," *Moriarty v. Neubould*, No. 02-CV-1662, 2004 WL 288807, at *2 n. 2 (D.Conn. Feb. 10, 2004) (migraine headaches constitute a sufficiently serious condition when they are "extremely painful and debilitating"), Plaintiff admitted that his headaches did not impair his daily activities. Plaintiff specifically testified that during the period when he did not receive his medication he "wasn't always feeling bad" and added that "it wasn't everyday" that he felt sick. (Pl. Dep. at 75, ECF No. 51-1.)

The Second Circuit has also instructed that "where the prisoner is receiving appropriate on-going treatment for his condition, but ... brings a ... denial of medical care claim based on a temporary delay or interruption in treatment," the court's "inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Bumpus*, 495 F. Supp. 2d at 320. Here, the Court finds Plaintiff's injury was not sufficiently severe. The frequency of Plaintiff's headaches and nose bleeds was sporadic, "not constant[]." (*See* Pl. Dep. at 75) ("You know, every now and then, you know, I experienced headaches. Sometimes I'd blow my nose, and I'd get a little blood there. But I was really in the hopes that I would receive my medication"). When asked why he didn't go to sick call to have his headaches examined he stated, "because it wasn't that bad." (*Id*.) Plaintiff even testified that he continued fulfilling all of his work obligations in the mess hall. (*Id*. at 85-86.)

The only other symptom that Plaintiff claims to have had during the relevant period of time to this lawsuit it that he once collapsed and had to be wheelchaired to the emergency center, where he was given his medications. (Def. Mem. at 38, 43.) But based on how quickly Plaintiff's condition was restored, the Court finds that this too was at best a temporary and inadvertent interruption in his treatment, which was likely partly attributable to his own inconsistency in taking his medications, and not a severe intentional deprivation of his medical treatment, as required for an Eighth Amendment violation under the law. *See Bumpus*, 495 F. Supp. 2d at 320.

In sum, the medical records show that Plaintiff's injuries simply are not sufficiently serious to satisfy the objective prong of the deliberate indifference inquiry. *Davidson v. Scully*, 155 F. Supp. 2d 77, 89 (S.D.N.Y. 2001) (Plaintiffs blurry vision, headaches, and tearing are not conditions

that produce degeneration or extreme pain and are not a sufficiently serious condition under the Eighth Amendment); *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (concluding that nausea, shakes, headache and depressed appetite do not rise to the level of serious medical need). The headaches and minor discomfort that plaintiff alleges is not a sufficiently serious condition to trigger an Eighth Amendment violation.

Lastly, as Defendant notes, "an affliction as common as headaches can be caused by any number of factors, and plaintiff has put forth no evidence to support that the headaches were even connected to his lack of medication." (Def. Mem. at 12.) The Court agrees. Plaintiff has not proffered any evidence to show causation and, in fact, admitted that he was inconsistent with taking his medications even before his prescriptions ran out. (Monroe Dec. ¶ 20, ECF No. 52) ("Also during my medical visit with plaintiff on February 18, 2015 plaintiff had a physical exam. His bloodwork was reviewed. His compliance with medication was discussed. Plaintiff told me that he does not always take his Atorvastatin and I informed him of the importance of taking his medication as prescribed.") Plaintiff himself testified: "I'm not a doctor. I don't know. I was just thinking it was because of a lack of medication that I'm not receiving." Plaintiff also admitted that his headaches might have been "psychosomatic" rather than caused by a serious medical condition. (Pl. Dep. at 75) ("I wasn't always feeling bad. But I needed my, my medication. I guess it was psychosomatic. I mean medications is due every month. And I was asking for the – requesting for the refills – but I mean it wasn't every day I was sick.")

Hence, in addition to the lack of severity of his injuries, Plaintiff is merely speculating that the cause of his headaches was his lack of medication. In sum, drawing all inferences in Plaintiff's

favor, Plaintiff has not produced sufficient evidence for a trier-of-fact to conclude that he suffered an objectively serious enough injury, caused by the delays in refilling his medications, to constitute an Eight Amendment violation.

### 2. Subjective Intent

Even though Plaintiff failed to meet his burden of proof for showing an objectively serious medical injury, Plaintiff also failed to show that defendant acted with the required subjective "deliberate indifference." To satisfy the subjective prong of the deliberate indifference inquiry, "the charged official must act with a sufficiently culpable state of mind." *Fulmore v. Mamis*, 2001 WL 417119, at *7 (S.D.N.Y. April 23, 2001) (quoting *Hathaway*, 99 F.3d at 553). The deliberate indifference standard does not require a prison employee to act or fail to act with *actual knowledge* that the result would cause harm to a prisoner; it is sufficient to show that the employee "acted or failed to act despite his knowledge of a *substantial risk* of serious harm." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Farmer*, 511 U.S. at 842) (emphasis added). The Second Circuit has further held that the improper or insufficient medical treatment must be so harmful that it can properly be characterized as a "barbarous act" that "shocks the conscience." *United States ex rel. Hyde*, 429 F.2d 864, 866 (2d Cir. 1970) (internal citation omitted); *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974).

Based upon the limited interactions that Plaintiff shows he had with Monroe, there is nothing to suggest that she acted with the requisite state of mind to rise to the level of deliberate indifference. Deliberate indifference is the "equivalent to the familiar standard of

'recklessness' as used in criminal law." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir.2002)). The Eighth Amendment is violated only if the medical care provider was "willfully blind" to a serious injury. *See Salahuddin*, 467 F.3d at 282.

Plaintiff's claim lacks proof to suggest that Monroe knowingly or intentionally withheld Plaintiff's medication, or that she was even aware of the fact that he was not receiving his medication or suffering from pain. In fact, there is evidence to the contrary. (*See* Monroe Dec. ¶¶ 21-22) ("I did not see plaintiff again until September 19, 2015. September 19, 2015 was the first time that I was made was aware that plaintiff was in need of a refill on his prescription. Plaintiff did not come to sick call at any time to see any doctor or nurse, including myself between February 18, 2015 and September 19, 2015. When I saw plaintiff on September 19, 2015 he stated to me that he had not had his medication since July 2015. I prescribed him a 6 month prescription of both Atorvastatin and Hydrochlorothiazide.") Plaintiff has nothing to demonstrate the requisite culpable state of mind to a jury. *See Crigue v. Magill*, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (dismissing claim where plaintiff failed to show that defendant "knowingly or intentionally" delayed his treatment and noting that "[w]hile delays in providing necessary medical care may in some cases demonstrate deliberate indifference, the Second Circuit has reserved those instances to cases when prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast- degenerating conditions... , or delayed major surgery") (internal quotation marks omitted).

Monroe saw Plaintiff on January 14, 2015 and February 18, 2015. When she saw him during these visits he was not in need of any medical treatment and his prescribed medications were continued. (*See* Monroe Dec. ¶ 23) ("Other than the fact that plaintiff had not received his medication, plaintiff was not treated for any further medical problem or illness when I saw him [i]n September 2015. I did not observe plaintiff to be suffering from any illness. Plaintiff did not complaint to me of any medical issues and did not require any further testing.") Plaintiff admits that during their interactions, Monroe was professional stating, "It's always been professional. I mean she has never acted blatantly disrespectful or nasty." (Pl. Dep. at 58.) Further when asked if Plaintiff and Monroe ever had any problems interacting together he stated, "Not at all. I've always been respectable towards her. I mean every time we, you know, come into contact with each other, it is basically brief. I mean there's no need for personal attitudes. It's strictly professional." (*Id.* at 58-59.)

Assuming that Monroe ever did receive one letter from Plaintiff, this would still not rise to the level of deliberate indifference. The record lacks evidence that Monroe was personally involved in Plaintiff's medical treatment beyond Plaintiff's assertion that he wrote a single letter. Plaintiff was asked in his deposition testimony the question, "during this time of June 2015 to August 2015 other than this one letter that I see that you wrote on July 14, 2015 did you have any other communication with Ms. Valerie Monroe", and Plaintiff answered, "No." (*Id.* at 74.) That is not enough to establish personal involvement in the alleged violations. *See Brooks v. Chappius*, 450 F.Supp.2d 220, 226 (W.D.N.Y. 2006) ("Even 'the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish

personal involvement'") (quoting *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998)).

Accordingly, Plaintiff fails to satisfy his evidentiary burden on the subjective element, and Defendant's Motion for Summary Judgment on this claim is GRANTED.

### B. Qualified Immunity

Lastly, Defendant argues that, even if Plaintiff's Eight Amendment claim was to survive summary judgment, Monroe is entitled to qualified immunity because "it was objectively reasonable for a person in Monroe's position to believe that her alleged conduct, which consisted of conducting an initial physical examination of plaintiff and issuing him a prescription for two medications with refills for the next six months provided him with adequate medical care for his needs and did not violate plaintiff's constitutional rights."(Def. Mem. at 17.) Once again, the Court agrees with Defendant.

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). The immunity protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 107 S. Ct. 3034,

3039 97 L. Ed. 2d 523, 640 (1987). "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 340-41 106 S. Ct. 1092, 1096 89 L. Ed. 2d 271 (1986)).

Plaintiff has not adduced sufficient facts to establish that it was unreasonable for a person in Monroe's position to believe that her alleged conduct—which consisted of conducting an initial physical examination of plaintiff and issuing him a prescription for two medications with refills for the next six months—failed to provide him with adequate medical care and violated his constitutional rights. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (a plaintiff must also show that the supervisory official's actions were a proximate cause of the constitutional violation).

As previously discussed, Plaintiff's symptoms and injuries were not severe. (*Supra*, Part III.A.1.). Additionally, Plaintiff did not report to sick call during June, July, or August of 2015 stating and believing that "it wasn't necessary". (Pl. Dep. at 76.) Plaintiff did not seek treatment in emergency during the period of May 2015-August 2015 for any medical condition and stated, "the pain wasn't constant. It wasn't like I had cancer or anything I mean I didn't hurt myself. But every now and then it would come and go." (*Id*. at 86.) He also testified that he continued to work his job in the mess hall. (*Id*. at 85-86.).

While Plaintiff repeatedly states that he wrote numerous letters to Monroe, he does not offer any proof that: 1) she ever received those letters, 2) sending letters addressed to her to the pharmacy was a valid way to get letters to her, or 3) the prison had told him that he could get refills

18

by sending letters to the pharmacy addressed to his healthcare provider. To the contrary, Monroe repeatedly testified that she never received his letters and that all inmates go through a uniform orientation, where the proper method for attaining prescription medications is explained to them, and they are taught that the medical office and the pharmacy are not connected. (*See* Monroe Dec. ¶¶ 25-26) ("During the period of time between February 18, 2015 and September 2015 I did not have any communication with plaintiff. He never requested to be seen during sick call and he never made an appointment[] with me or any other member of the medical unit at Sing Sing. I never received any written communication from him. I had no interactions with him at all. I was never informed, and therefore [was] unaware that there was a grievance filed by Plaintff in August 2015. I did not participate in the grievance process."); (*See* Pl. Dep. at 50-52) (relaying that Plaintiff had no proof that Monroe ever saw or received his correspondence and only believed she got it because he "put [the letters] in the mailbox.")

Additionally, when Plaintiff did finally see Monroe in September 2015, she did not observe him to be suffering from any actual medical condition, let alone any serious medical condition, and she immediately reissued his prescription. (Monroe Decl. at 22; Gashi Dec., Ex. B, p. 5); *Sulkowska v. City of New York*, 129 F.Supp.2d 274 (S.D.N.Y. 2001) (finding that, where plaintiff was denied her asthma medication while a detainee in police custody, the such conduct amounted to mere negligence, not deliberate medical indifference, as asthma was not sufficiently serious to warrant Eighth Amendment protection in the absence of an attack or symptoms of an attack).

Accordingly, Plaintiff has not provided sufficient proof that he suffered from any serious medical condition, which was caused by his lack of medication, or that Monroe acted objectively

19

unreasonable in making her medical decisions regarding Plaintiff's healthcare. Accordingly, Plaintiff is entitled to qualified immunity.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety, and all claims in this action are DISMISSED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 48, terminate the case, and to enter judgment in favor of Defendant. The Clerk of the Court is additionally directed to mail a copy of this order to Plaintiff at his last known address on ECF, and show proof of service on the docket.

SO ORDERED.

Dated:   March 11, 2019
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge